Good morning, Your Honors, and may it please the Court, Nicolás Jiménez, appearing for Appellant Eugene Temkin in this case, and if, with the Court's permission, I'd like to reserve at least two minutes for rebuttal at the end of my argument. All right. Please watch your time, because the time shown is your total time remaining. Thank you, Your Honor. All right. The District Court violated Appellant Eugene Temkin's Fifth Amendment rights to due process by making factual findings and adopting factual findings from the pre-sentence report regarding some uncharged conduct, and used those findings to greatly enhance Appellant Temkin's sentence in this case. Why didn't you tell the District Court about it? Your Honor, Mr. Temkin specifically objected to the factual findings that were ultimately adopted, and he Objected to what? The things in the PSR? Correct, Your Honor. Did you ever say anything to the District Court about clear and convincing evidence? No argument to that effect was made, Your Honor, but Mr. Temkin's So the District Court reflected what you suggested to it, ruling on whether it should take in hearsay or hold a hearing, and never was told about clear and convincing evidence, and so therefore you want to say they made an error? Well, Your Honor, the requests that Appellant specifically made are, in this case, were basically the reason, were basically the results that the Court could have used to make a clear and convincing finding in this case. Then why did you, did you ever look at GARO, U.S.V. GARO? G-A-R-O, Your Honor? Yes. There's no claim for clear and convincing evidence than review for plain error. That's what it says. Well we believe, although Appellant didn't specifically use the terms clear and convincing evidence, we believe the requests that he made put the District Court on notice that it had to do more to make factual findings in this case than merely adopt findings from the PSR. Because Appellant specifically asked for an evidentiary hearing, an opportunity to cross-examine the witnesses, which would have been the remedy to make a finding of clear and convincing evidence in this case. There was really no other way because the evidence that was being offered by the government to support these allegations were just some transcripts, some alleged testimony by a cooperating witness who was in custody. And so really the only way for the District Court to reach the clear and convincing standard would have been to grant the evidentiary hearing and at least some sort of... In general, you can make these objections to the PSR and the District Court can decide this on a preponderance of the evidence standard. That's correct, Your Honor. And so therefore, not telling the District Court anything about it, they would then determine it on a preponderance of the evidence standard, and that's what they did, and now you want to hold them to a higher standard of review. Well, Your Honor, the court was put on notice that more than just relying on the PSR was going to be necessary because a request... A preponderance of the evidence can be more than just relying. That's true, Your Honor. It can be more, but when you ask for an evidentiary hearing, preponderance of the evidence will not require that type of an adverse... Oh, come on. You have a preponderance of the evidence on evidentiary hearings on this kind of stuff all the time. That's true. I mean, having been there, I know. Well, that's correct, Your Honor. You can make factual findings by a preponderance of the evidence through an evidentiary hearing. That's correct. But the fact is, Appellant Express specifically told the court, you know, I need more than specifically just adopting the factual allegations, and so the court should have known that it should have done more. And if the court looks at the sentencing transcript, the court basically did not even inquire into these allegations beyond just saying, I adopt the PSR. There was nothing more done aside from that, and considering the seriousness of what was being alleged here and the ultimate effect that it had on the case, the court should have done more, and the court really did very little. All right. Counsel, may I ask you, what's your best case authority to support the proposition that if a clear and convincing evidence standard applies, there must be a hearing? What case says that? I don't have a case on hand that says that, Your Honor, but it's clear that a clear and beyond what courts usually use that sentencing to, as they can, to make preponderance of the evidence finding. How is it clear if you don't have a case that says that? Well, Your Honor, the case law in this area usually requires more. The cases cited in our brief and the cases, Mesa de Jesus, I believe is Restrepo, in those cases, the court specifically rejected relying on the PSR to reach a clear and convincing standard, and so the court, although the court doesn't say in those cases you need it to hold a hearing, our argument in this case was that appellant's request for a hearing was an implicit request for findings made beyond a preponderance of the evidence. That's our argument, and that's why we believe plain error review should not apply. It seems to me that Judge Rawlinson and I are on the same wavelength here. The clear and convincing standard only applies when the facts have a disproportionate effect on the sentencing, and we, on our circuit, have never applied it outside the facts trigger guideline enhancements, and this is not a guideline enhancements case. That's correct. It's not, Your Honor. So, therefore, it seems to me that the clear and convincing standard doesn't apply unless you tell me why I need to apply it. Well, Your Honor, if the court looks at the entire history of the reason that enhancement, that standard was applied in the first place, it was a concern for due process. Now, the court is correct. The court has never applied it in a guideline enhancement context, but... It always applies it in a guideline enhancement context. Correct. The court always applies it in a guideline... But outside of that, which this is not. But initially, in the very early cases where this standard was... What's your best case? Well, Your Honor, the court... Very early cases. I went through these Ninth Circuit cases and tried to see where it was. I looked at Collins, said it was not applicable on a special conditions for supervised release. I look at Felix, it says it's not applicable in that particular case because it's only applicable when finding, triggering a mandatory minimum. I look at Dare, it says not applicable unless you're in an enhancement situation. I look at Gonzalez, it says it's not applicable for a special probation. I mean, all of the cases that I looked at to try to help you, I couldn't find it. Well, Your Honor... So, what's my best case for you? I don't think you got one. Well, Your Honor, there is no case that says what the court is suggesting. The court is correct on that side. But appellant's argument is based in due process. And when this standard was approved, it was approved to avoid the type of situation that the court is seeing here, which is the district court discretion is guided by a range of conduct. But part of that conduct was not proven at trial. And it's of a severity that has an impact on the sentence that requires more beyond preponderance of the evidence and just relying on due process. Now, the very early cases, such as Valencia and even Restrepo and Treadwell, those cases just make the case that when at sentencing, due process sometimes requires more. And that's appellant's argument in this case. Due process in this case, for him, for the district court to do what it did in this case, due process would have required a little bit more than what the court did. That wasn't the evidence clear and convincing. Why wasn't it clear and convincing, Your Honor? Particularly, you know, there was one instance where after your client told a hitmate that he was happy to, he was interested in going along with the assassination, the FBI provided the inmate with false contact information for a purported Russian hitman. And around a month later, the inmate told the FBI that Temkin had mailed to the hitman photocopies of the driver's license of Hirschman's wife, Hirschman's wife and Mount Peso's driver's as well as their passport photos. And soon thereafter, the documents arrived at the P.O. box of the FBI. You're wrong. I think that's pretty clear and convincing. The court makes a good point, but the issue is there was other, there was also other instances where the informant said, for example, he called, the informant said something like appellant Temkin called the hitman and then the hitman ended up confirming with the FBI that that call never happened. Aside from the fact that these were allegations from 2012, your honor, appellant Temkin was allowed to go to a halfway house and be basically in the free community five years after this happened. And the government never brought this up. Now that they have some reasons, they say justified that. But the fact of the matter is there were a lot of strange circumstances and the credibility of this informant was the main concern here. And that's why the evidentiary hearing would have been crucial because this was a cooperating inmate witnesses who had made contradictory statements. What I've suggested to you seems to me to be compelling corroboration of a jailhouse informant. Usually it's the jailhouse informant's word and that's what makes his testimony suspect since he could be making up a story simply to get consideration for himself. But this was, this was extraordinarily corroborated. Some instances were corroborated, your honor. But this was a serious, that was one of them. But there were also instances where he said something happened and it proved to be a lie. I'm over my time, your honor. We'll give you a minute for rebuttal because we helped you go over your time. Thank you. All right. We'll hear from the government. If somebody's device is going off, would you please silence it? Good morning, your honors. Bram Alden on behalf of the United States. May it please the court. Two years ago, this court ruled that the district court had under-calculated defendant's guideline sentencing range and therefore remanded for resentencing purposes. The import of defendant's current appeal is that this court's prior decision was in effect meaningless and that defendant should have received the exact same sentence he received under the incorrect guidelines range. Of course, that's not the case. He still received a sentence that was five and a half years below the correctly calculated guidelines range. And as the court has pointed out, he never objected to the burden of proof below. Accordingly, this court should certainly affirm the plain error review standard applies because, as Judge Smith has pointed out, the Garrow case as well as Armstead, Gonzalez, and Riley all require that a defendant who wants to object to the burden of proof must specifically do so. There's a reason for that. Of course, the district court would like to know if a defendant thinks that a clear and convincing evidence standard applies, then the district court could make findings by clear and convincing evidence if the court agrees. There's only one problem that I see in that. I question him pretty vociferously, I guess I could say, about that. But when Temkin did object to the PSR, he did talk about his due process rights. And it seems to me like the standard of review is due process right. And therefore, reading what he said as wide as maybe I need to, I'm, again, trying to figure out why I would do plain error. And I'll let you respond because I really tried to say to him you needed to tell the judge. But when you say due process, if I put that as wide as it need be, the standard of review is right there. That's why I like standard of review. So, Your Honor, I think that no case has held that merely objecting vaguely to due process or using the words due process is sufficient to satisfy the requirement that a specific objection be made to the ordinary preponderance standard. The cases that the government has cited all hold that a specific objection to the burden of proof is what is required. There are obviously multiple facets of due process that a defendant could be objecting to. What do I do with Berger? United States v. Berger, 587 Fed Third 1048. It says, in short, whether the district court violated due process by using an improper standard of proof is a question of con law that we review de novo. So I know that this court often will hold that if it's a pure question of law, it can be reviewed de novo. The cases that the government has cited are all specific to this area of law, which is the burden of proof, that Garrow, Armstead, Gonzales, Riley line of cases. And I think that although it is a question of law, it is actually a question of law that affects the district court's proceedings significantly, because the district court needs to know what standard of review applies or what objection is being made in order to determine whether that standard is met, whether further evidence is necessary, whether an evidentiary hearing would matter, whether all of the other factors, regardless of this one factor, would satisfy the sentence that was or would justify the sentence that was imposed. So I certainly recognize that there's case law, and certainly in many realms, saying that a pure question of law can be reviewed de novo. This question has specifically been held to be one in which an objection is required in order to trigger de novo review and appeal. Okay, so we get to the sentence. The first time he got 72 months. Yes. In a 121 to 144 range. This time he got 144 months, but it's not the same when you apply it directly to the range, because the new range is 210 to 262, and 144 is not the same departure. Does that make it such that we ought to worry about this? No, Your Honor. In fact, that is a greater departure from the low end of the correctly calculated range than the original sentence was from the incorrectly calculated range. So, if anything, the defendant got a more significant benefit the second time around. What the defendant is arguing is that he was entitled to the exact same percentage reduction in his sentence, but in raw terms he actually got a greater reduction than the first time. And no case remotely holds that a clear and convincing evidence standard is necessary to establish a fact that results not in any increase whatsoever, but perhaps in a less significant or substantial decrease. That is simply not at all in accord with due process. So we're really looking at extremely disproportionate, and you're saying that it's not extremely disproportionate even though it's not the same? Yes, Your Honor. Under the correctly calculated range, the low end, as you've pointed out, was 210 months. The high end was 262. The defendant's sentence of five and a half years below the low end, there was no factor that made it extremely disproportionate to any range within the guidelines. In fact, it was well below. In addition, as Your Honor pointed out, when questioning appellant, the case law from this circuit has held that a sentencing factor subject to the clear and convincing evidence standard needs to actually result in an enhancement to the defendant's sentence, whereas this fact resulted in no enhancement whatsoever. I would also argue that Judge Corman is correct in pointing out that the clear and convincing evidence standard was satisfied here. This case not only involved a mailing to a monitored PO box, but it also involved a recorded conversation with the inmate informant. So it went well beyond the one person's word against another, the defendant's word against a convicted informant. It was actually a wire that the informant went in with and recorded a lengthy conversation with the defendant. So even if the clear and convincing evidence standard were to apply, it was satisfied. The only other argument that the government makes is that following Beckles, the due process regime really should never be applying a clear and convincing evidence standard to sentencing factors, and that is something that the government stands by. The Beckles decision made clear that the due process analysis has to look at the sentencing regime that is in place. Under the current advisory sentencing guidelines regime, that is not where the clear and convincing evidence standard developed. It developed at a time when sentencing facts automatically triggered enhancements in a defendant's sentence. What do I do with the language in Beckles that says that that decision, and this is the Supreme Court's language, does not render sentencing procedures entirely immune from scrutiny under the due process clause? It seems to me that if I go and I write an opinion in this particular case or I join one of my good colleagues, and I see this language dead set, render sentencing procedures does not render them immune, it would be a tough thing to suggest, given that case, that we could get there. So I think I would say, Your Honor, that the language actually reflects that the due process analysis is severely circumscribed. When the court says it does not render it entirely immune, that suggests that, in fact, it is very circumscribed, and the court then cites Williams right in that sentence that you were quoting from, Your Honor, and the Williams case is a case in which the Supreme Court questioned whether a district court judge could rely on the pre-sentence report to make findings to impose the death penalty on a defendant under the due process clause, and in that case, back in 1940-something, the Supreme Court held that, in fact, that satisfied due process. Well, if I look at our case, Statton, which is at 466 Fed Third, where it says whether the district court violated due process by using improper standard or proof is a question of con law that we review de novo, and I review HIMAS, and then I look at what the Supreme Court said in Beckles, don't you think it's more advisory for me to rely on our precedent rather than strike out in this Beckles vein that you argue for me to take? Your Honor, the government would be perfectly satisfied to rely on this court's precedent that supports the government's position. The government's position, though, is that this court at some point needs to begin reevaluating a law that no other circuit, according to the briefs, according to the case that the government has cited, and I have not done a thorough exhaustive review, so I can't represent that no other circuit still applies a clear and convincing evidence standard, but this court's now case law is an anomaly in that respect. It appears that the other circuits are in pretty serious agreement that due process is satisfied by a preponderance standard, and under Beckles, the preponderance standard is not meaningless. It is still something that due process requires, and that should be enough, unless the court has further questions, Your Honor, the government. I was curious what your response is to opposing counsel's opposition to the court relying on the pre-sentence report without conducting additional proceedings. Your Honor, that is actually a very standard practice. At sentencing, the district court is entitled to rely on the pre-sentence report. It is entitled to rely on hearsay. It is under no obligation to conduct an evidentiary hearing, and while counsel represented that all that was in evidence or that the court relied on was the pre-sentence report, in fact there were substantial submissions by both parties regarding the post-conviction conduct that were made in the context of determining whether the defendant should be further detained pending resentencing, and those submissions contained a large body of evidence, including from the government, the entire transcript of the recorded conversation with the informant, the FBI reports reflecting that the defendant had in fact attempted to mail documents to what he believed was a murder-for-hire hitman, and so there were significant pieces of evidence upon which the court could rely to make this finding. All right, thank you, counsel. Thank you. One minute for rebuttal. Thank you, Your Honor. As to that last point, I would only note that while that may be true and there was substantial evidence in the record, the district court at sentencing and at the various sentencing hearings only said I'm adopting the factual findings of the pre-sentence report. The district court didn't discuss anything regarding this conduct aside from I'm adopting the factual findings of the pre-sentence report, and so we don't know what exactly the district court figured out was going on in terms of this conduct aside from what the pre-sentence report alleged specifically. Didn't the district court give an explanation of why he was giving a hire? The district court gave a very specific explanation and said the first time around I thought about this case very, very carefully, and I thought a six-year sentence was more than sufficient considering the equities. Didn't he suggest that he thought it was a one-off proposition? That's correct. And now he said I see that I was wrong. That's correct, Your Honor. That's exactly what the court said. The court said the first time I gave you six years because I thought you wouldn't do this again, and now I'm giving you 12 years because here we are, we have done it again. So that's why we made this argument about we have real concrete proof that this was a disproportionate impact on this particular sentence. Well, it's a worry. I mean, I realize where you went with your last argument, but it's a real worry that he has to start at a totally different range. I mean, the bottom line is he used 32 the first time. He had to go up to 37, and using a totally different range, 210 to 262, he still departed down to 144, which was a departure. And what you're suggesting is having to start at a different range and yet going down that there is somehow in this record, if you will, a disproportionate effect, and that ignores the disproportionate effect cases from the Ninth Circuit. Well, Your Honor, the court did make the disproportionate effect is seen the way sentencing was handled in both steps of the proceedings. The first sentencing, the court was very thorough. The court held very long hearings, took into account a vast amount of evidence, and at the second hearing, the court basically said, we're here again and you've committed the conduct again. I'm giving you 12 years. And I've got to raise the range because the Ninth Circuit, bless their hearts, made me. And so I've raised it, and I'm still going to go down. The court did go down, no doubt about that, Your Honor. We do feel, though, that to go from the six years, which was very well thought out and reasoned, to 12 years, the court had to do a little more in this case, which it didn't do in our opinion. Thank you. My time is up. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, N.R. Smith, Korman